UNITED STATES DISTRCT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY D. ROBERTSON, R52633, ) | |
| ) | |
| Petitioner, ) | Case No.: 1:14-cv-03405 |
| ) | |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| KIM BUTLER, Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is a pro se motion pursuant to 28 U.S.C. § 2254 to vacate, set aside, or correct the conviction rendered against Timothy D. Robertson ("Petitioner") in February 2006, and the sentence rendered against him in the Circuit Court of Lake County, Illinois in May 2006. For the reasons set forth below, we deny Petitioner's request for habeas relief.

## BACKGROUND AND PROCEDURAL HISTORY

We begin with a review of the factual background of Petitioner's conviction and the procedural history of his appeal.

**I. Robertson's Conviction**

In February 2006, a jury in the Circuit Court of Lake County found Petitioner guilty of first degree murder and felony murder. (Dkt. No. 17, State Ct. R., Ex. G, Post-conviction Appeal Order, *People v. Robertson*, No. 2–12–0250 (Ill. App. Ct. 2013) at 1.) During a drug transaction, Petitioner punched and kicked the victim Jonny Tate ("Tate") multiple times. (*Id.* at 2.) Tate's date, Angela Roberts ("Roberts"), and two residents of the apartment building where the incident

1

occurred witnessed the fight. (Dkt. No. 17, State Ct. R., Ex. A, Direct Appeal Order, *People v. Robertson*, No. 2–06–0619 (Ill. App. Ct. 2008) at 2.) All three witnesses testified that Tate attempted to escape, but Petitioner continued to follow him and punch him in the chest and head. (*Id.*) Tate later died due to his head injuries. (*Id.* at 3.) Petitioner was apprehended at the scene. (*Id.* at 3.) Roberts testified that Petitioner told her that he wanted to "break some bones [that night]." (Post-conviction Appeal Order at 2.) Petitioner claimed Tate hit him first. (*Id.*)

At Petitioner's trial, an evidence technician testified that he saw what he believed to be blood on Petitioner's shoes, pants and hand, but did not analyze the blood evidence in the lab. (*Id.*) At trial, Petitioner's attorney faulted the State for not having the blood tested. (*Id.* at 4.)

Petitioner was found guilty and was sentenced on May 16, 2006 to thirty-four years in prison. (*Id.*)

## II. Direct Appeal

On July 23, 2007, Petitioner filed an appeal to the Illinois Appellate Court. (State Ct. R., Ex. C, Pet'r Direct Appeal Br. at 2.) In that appeal, Petitioner challenged the trial court's sentencing decision. (*Id.* at 1.) On May 12, 2008, the Illinois Appellate Court affirmed the trial court's conviction. (Direct Appeal Order at 1.)

Petitioner then filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, again raising his sentencing arguments. (Dkt. No. 17, State Ct. R., Ex. E, Direct Appeal PLA at 3.) On September 24, 2008, the Illinois Supreme Court denied Petitioner's request for an appeal. (Dkt. No. 17, State Ct. R., Ex. E, Order Denying Direct Appeal PLA at 3.)

## III. State Post-conviction Proceedings

Petitioner filed a post-conviction petition in the Circuit Court of Lake County alleging for the first time that he was entitled to relief due to: (1) his trial counsel's failure to seek

suppression of Petitioner's statements to the police; (2) his trial counsel's failure to perform DNA testing on Petitioner's bloody pants; (3) his appellate counsel's failure to raise the issue of his trial counsel's ineffectiveness regarding the bloody pants, and (4) his appellate counsel's decision to not raise on appeal hearsay issues at sentencing. (Post-conviction Appeal Order at 2.) The trial court appointed post-conviction appellate counsel for Petitioner. (*Id.*) The State moved to dismiss the claims, and the trial court granted the motion. (*Id.*)

Petitioner appealed the denial of his post-conviction relief to the Illinois Appellate Court, raising the same issues regarding the ineffective assistance of trial counsel and appellate counsel. (*Id.*) He reiterated the claims he made in the original post-conviction petition, but dropped the claim of ineffective assistance of appellate counsel for not addressing on appeal hearsay issues at sentencing. (*Id.*) The Appellate Court affirmed the state court decision. (*Id.* at 1.)

Finally, Petitioner filed a PLA to the Illinois Supreme Court, which again raised his ineffective assistance of trial claims but dropped his ineffective assistance of appellate counsel assertions. The Illinois Supreme Court denied the PLA on March 26, 2014. (Dkt. No. 17, State Ct. R., Ex. K, Post-conviction PLA at 3–6; Dkt. No. 17, State Ct. R., Ex. L, Order Denying Post-conviction PLA at 1.)

**IV. Federal Habeas Petition**

On May 7, 2014, Petitioner filed a federal habeas petition, asserting the following four claims:

**Claim A:** Petitioner was deprived of his right to due process because the prosecution failed to show whose blood was on his jeans, and therefore, the state failed to prove Defendant's guilt beyond a reasonable doubt.

**Claim B:**  Petitioner was denied his right to the effective assistance of trial counsel because trial counsel failed to obtain DNA testing of the bloody jeans.

**Claim C:**  Petitioner was subject to ineffective assistance of appellate counsel on direct appeal because appellate counsel failed to raise trial counsel's ineffective assistance claim regarding the blood test.

**Claim D:**  Petitioner was subject to ineffective assistance of appellate counsel during post-conviction proceedings because appellate counsel failed to properly amend the petition to comply with Illinois Supreme Court Rule 651.  (Dkt. No. 1, Pet. at 5–6.)

## ANALYSIS

We start our analysis by addressing whether Petitioner is entitled to federal habeas relief on his claims and next consider whether he has exhausted state court review to avoid procedural default.

### I. Non-Cognizable Claims

"The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene.  To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'"  *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (internal citations omitted).  Accordingly, we must first determine whether Petitioner states a cognizable claim for habeas relief.

#### a. Ineffective Assistance of Post-Conviction Counsel (Claim D)

In Claim D, Petitioner seeks habeas relief for what he claims was ineffective assistance of counsel during his post-conviction proceedings.  Federal habeas claims alleging ineffective assistance of counsel during federal or state post-conviction proceedings are not cognizable.

4

*Huusko v. Jenkins*, 556 F.3d 633, 635 (7th Cir. 2009); *Szabo v. Walls*, 313 F.3d 392, 397 (7th Cir. 2002); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.")  Claim D therefore cannot provide basis for a habeas corpus claim.

## II. Procedural Default

For us to review a claim for a writ of habeas corpus on the merits, the petitioner must exhaust state court remedies and avoid procedural default.  28 U.S.C. § 2254(b)(1); *Rosario v. Akpore*, 967 F. Supp. 2d 1238, 1246 (N.D. Ill. 2013) (citing *Perruquet*, 390 F.3d at 513–15).  To avoid procedural default, the petitioner must fairly present all of the claims included in his federal habeas petition in one complete round of the state court's appellate review, either on direct appeal or in post-conviction proceedings.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."); *see also United States ex rel. Ojeda v. Harrington*, 11 C 5779, 2014 WL 2581320, at *7 (N.D. Ill. June 9, 2014).  A full round of direct appeal review includes the initial appeal to the Appellate Court followed by a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court.  *O'Sullivan*, 526 U.S. at 843, 119 S. Ct. 1728 at 1731–32.  A full round of review on a post-conviction petition includes the initial action in state circuit court, an appeal in the Appellate Court, and a PLA to the Supreme Court.  *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).

### a. The State Failed to Prove Petitioner's Guilt Beyond a Reasonable Doubt (Claim A)

Petitioner failed to raise his insufficient evidence claim either on direct appeal or in his post-conviction petition. (Pet'r Direct Appeal Br. at 3; Direct Appeal PLA at 3–6; Dkt. No. 17, State Ct. R., Ex. H, Pet'r Post-conviction Br. at 2–3; Post-conviction PLA at 3–6.) Accordingly, Plaintiff did not present this claim for "one complete round of review," so it is procedurally defaulted and we will not assess its merits.[1] *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732–33; *Lewis*, 390 F.3d at 1026.

### b. Ineffective Assistance of Counsel Claim Related to Testing of the Bloody Jeans (Claim B)

Petitioner raised his ineffective assistance of trial counsel claim relating to the testing of the bloody jeans in his post-conviction petition, his post-conviction appeal, and in his post-conviction PLA. (*See* Pet'r Post-conviction Br. at 2–3; Post-conviction PLA at 3–6.) Accordingly, his post-conviction petition constitutes one complete round of the state court's appellate review. *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732. Therefore, Claim B is not procedurally defaulted.

### c. Ineffective Assistance of Appellate Counsel (Claim C)

Petition failed to raise his ineffective assistance of appellate counsel claim to the Illinois Supreme Court in either direct review or in his post-conviction petition. (Pet'r Post-conviction

---

[1] A petitioner can excuse a procedural default only if he can establish cause and prejudice for the default or that the failure to consider the claim would result in "a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 724, 111 S. Ct. at 2551; *Lee*, 750 F.3d at 693. When a petitioner fails to allege an excuse for a default, the court cannot consider the merits of the claim. *Lee*, 750 F.3d at 693; *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008). Here, Petitioner did not include in his petition any reason to excuse the default. Therefore we cannot review Claim A on its merits.

Br. at 2–3; Post-conviction PLA at 3–6.) Accordingly, Petitioner did not fairly present Claim C in "one complete round of review" on direct appeal or during post-conviction proceedings and therefore Claim C is procedurally defaulted.[2] *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732–33; *Lewis*, 390 F.3d at 1026.

### III. Merits of Ineffective Assistance of Trial Counsel Claim (Claim B)

Since Claim B is not procedurally defaulted, we next analyze the merits of that claim.

  a. **28 U.S.C. § 2254**

Pursuant to 28 U.S.C. § 2254, a court may issue a writ of habeas corpus after a state court judgment only where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To succeed on a habeas claim, a petitioner must show that the state court's judgment: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 1519 (2000); *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011).

A state court's decision is "contrary" to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Taylor*, 529 U.S. at 405, 120 S. Ct. at 1519; *see also Morgan*, 662 F.3d at 797; *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005). To be an "unreasonable application," a state court's application of federal law

---

[2] Like Claim A, Petition did not include a reason for us to excuse his default so we will not review Claim C on its merits. *Lee*, 750 F.3d at 693; *Crockett*, 542 F.3d at 1193.

must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Taylor*, 529 U.S. at 410, 120 S. Ct. at 1522 (finding that "a federal habeas court may not issue the writ simply because that court concludes . . . that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *see also Morgan*, 662 F.3d at 797. For a state court judgment to be unreasonable under this standard, it must lay "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *accord Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004).

   **b. Ineffective Assistance of Counsel**

Petitioner argues that he was denied his right to effective assistance of trial counsel when his trial counsel failed to obtain DNA testing on his jeans. (Pet. at 5–6.)

During Petitioner's trial, a lab technician testified that he observed blood on Petitioner's jeans but did not test the blood. (Post-conviction Appeal Order at 2.) Petitioner's attorney did not seek testing of the blood prior to trial but during his closing argument faulted the State for not having the blood tested. (*Id.*) On post-conviction appeal, the trial court dismissed Petitioner's ineffective assistance of counsel claim and the Appellate Court affirmed. (*Id.*) The Appellate Court concluded that Petitioner's trial counsel was not deficient because he had strategic reasons for not testing the blood on Petitioner's jeans; it was likely that testing would confirm that the blood on the jeans was the victim's and would further incriminate Petitioner. (*Id.* at 3.) Additionally, the Appellate Court determined that any error was harmless since there was sufficient evidence, including testimony of three eye witnesses, showing that Petitioner was the aggressor and continued to punch Tate while Tate attempted to escape. (*Id.*) For the reasons that follow, we find that the Illinois Appellate Court decision was not an "unreasonable

8

application" of Supreme Court precedent, nor does it rest upon an unreasonable determination of the facts. *Williams*, 529 U.S. at 409, 120 S. Ct. at 1519.

       *i.*    *Reasonable Application of Federal Law*

To prevail on an ineffective-assistance of counsel claim, a petitioner must show that: (1) his counsel provided deficient performance; and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2055 (1984); *Mertz v. Williams*, 771 F.3d 1035, 1041 (7th Cir. 2014). The Illinois Appellate court correctly identified the two-part test in *Strickland* in its post-conviction review of the case, and therefore its determination was not "contrary to" federal law. (Post-conviction Appeal Order at 3.)

In addition, the Illinois Appellate Court's decision was not an unreasonable application of federal law. First, the Appellate Court reasonably determined that trial counsel did not provide deficient performance due to his failure to test Petitioner's bloody jeans. To succeed on an ineffective assistance of counsel claim, petitioner must overcome the strong presumption that the challenged conduct was within the scope of a sound trial strategy. *Strickland*, 466 U.S. at 669, 687, 104 S. Ct. at 2055, 2065; *Mertz*, 771 F.3d at 1042. Counsel enjoys latitude in choosing a tactic and strategy. *Harrington v. Richter*, 562 U.S. 86, 89, 131 S. Ct. 770, 779 (2011); *see also Strickland*, 466 U.S. at 687, 104 S. Ct. at 2065. Moreover, counsel's challenged conduct should be viewed from the time of counsel's act instead of in hindsight. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Harrington*, 562 U.S. at 89, 131 S. Ct. at 779.

Trial counsel's decision to not test the blood on Petitioner's jeans fell well within the scope of counsel's sound strategy because there were tactical reasons for not having the blood tested. Thus, counsel's strategic decision cannot constitute deficient performance. *Strickland*, 466 U.S. at 669, 687, 104 S. Ct. at 2055, 2065; *Mertz*, 771 F.3d at 1042.

### ii. Petitioner was not Prejudiced by Counsel's Conduct

Secondly, trial counsel's strategy concerning the jeans did not prejudice Petitioner. To prove the prejudicial effect of counsel's challenged conduct, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669, 104 S. Ct. at 2055–56; *Mertz*, 771 F.3d at 1043. We find that the Illinois Appellate Court reasonably concluded that trial counsel's failure to test Petitioner's bloody jeans did not prejudice Petitioner in the trial, because there was sufficient eye witness testimony proving that Petitioner was the aggressor. (*Id.*) Accordingly, even if the blood was tested, there was sufficient evidence to convict.

Because the state appellate court used correct legal principles and reasonably applied the *Strickland* test for ineffective assistance of counsel to the facts, Petitioner is not entitled to relief on Claim B.

## CERTIFICATE OF APPEALABILITY

In the event that Petitioner intends to appeal this decision, we decline to issue a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c)(1), a COA is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c). We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Walker v. O'Brien*, 216 F.3d 626, 631–32 (7th Cir. 2000). To show that his constitutional rights have been denied, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893,

103 S. Ct. 3383, 3395 (1983)). For claims dismissed on procedural grounds, a district court should issue a COA only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Here, reasonable jurists could not debate our conclusion with respect to Petitioner's Claim A and Claim C, which we have dismissed due to procedural default. Petitioner did not properly present these two claims to the state court, and we have no basis to excuse his default. To reach the merits of these defaulted claims would undermine the procedural protection in place for ensuring a federal court's deference to state court proceedings. *Murray v. Carrier*, 477 U.S. 478, 489, 106 S. Ct. 2639, 2646 (1986).

We dismiss Claim D because ineffective assistance of post-conviction counsel claims are not cognizable. *Huusko*, 556 F.3d at 635; *Szabo*, 313 F.3d at 397; *see also* 28 U.S.C. § 2254(i). To find otherwise would directly contradict the plan language of 28 U.S.C. § 2254(i) and long-standing precedents that hold that such claims cannot provide a basis for a habeas corpus petition. *Id.* We therefore decline to issue a COA for Claim D.

Finally, no reasonable jurist could disagree with our analysis on the merits for Claim B. As addressed above, clear precedent dictates the outcome of Petitioner's Claim B. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2055; *Mertz*, 771 F.3d at 1041. Petitioner's trial counsel was not deficient by failing to test Petitioner's bloody jeans; counsel's decision was a reasonably sound trial strategy and even if the blood had been tested, eye witness testimony presented at trial was sufficient to convict. (Post-conviction Appeal Order at 4.) For these

reasons, Petitioner has not made a substantial showing of the denial of a constitutional right, as necessary for us to issue a COA. *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

## CONCLUSION

For the foregoing reasons, we deny Petitioner's petition for writ of habeas corpus. We also decline to issue a certificate of appealability. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: August 30, 2016
       Chicago, Illinois